IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EMMITT G. ROSCOE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18-cv-00319 |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY KISER, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

MEMORANDUM OPINION

Emmitt G. Roscoe, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983,[1] naming eight defendants: J. Kiser, J. Artrip, M. Elam, Jessica King, J.D. Bentley, T. Marsee, N.Z. Perrigan, and M.L. Counts. His complaint asserts two claims. The first is a claim that defendants Counts, Kiser, Elam, and Bentley violated his Fourteenth Amendment right to due process during a disciplinary hearing. The second is a claim that defendants Artrip, King, Bentley, Marsee, and Perrigan retaliated against him, in violation of his First Amendment rights, because he made a report of staff misconduct under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301–30309.

Defendants have filed a collective motion for summary judgment, which is ripe for disposition and addressed herein. Upon review of the record, the court concludes that defendants' motion for summary judgment should be granted in part and denied in part. Specifically, it will be granted as to all claims except the retaliation claims against defendants Bentley and Perrigan.

## I. BACKGROUND

### A. Events of January 7 and 8, 2018, and Roscoe's PREA Report

Roscoe is a Virginia inmate currently housed at Sussex I State Prison ("Sussex"). At the

---

[1] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2007).

time of the events at issue in this lawsuit, he was housed at Red Onion State Prison ("Red Onion"). According to Roscoe's verified complaint, on January 7, 2018, he asked defendant Marsee for an informal complaint form as she and defendant Perrigan were making rounds, and Marsee responded, "Roscoe we are sick of you and all your complaint filing. Pack your stuff, [you're] going to [segregation]." When Roscoe asked why he would be going to segregation, Marsee responded that it was "for asking for any complaint" and said she would "figure something out." (Compl. ¶ 22.)

"Moments later," which Roscoe identifies as approximately 7:20 p.m., Perrigan and Correctional Officer Stevens came to Roscoe's cell. Assuming that Roscoe was going to complain about a lack of recreation time, Stevens said "Why you mad about rec[?] It gives you more time to f*** your [cellmate]." (*Id.* ¶ 23.) Five minutes later, Stevens and Perrigan returned again, and Perrigan asked Roscoe why he was kicking the door. Roscoe states that he was lying on the bed at the time, denied kicking the door, and stayed on the bed. Stevens directed Roscoe to get out of the bed, and Roscoe complied, reporting to the cell door. At that time, Stevens engaged in an "aggressive attack" against Roscoe and more verbal harassment and threats of physical harm, and Roscoe argued back. While this was occurring, Roscoe saw Marsee and stated that he needed to make a PREA complaint, to which Marsee responded, "Yeah, from segregation." (*Id.* ¶ 24.)

At 8:00 p.m. the same evening, a captain came to Roscoe's cell, pulled him out to the pod table and asked if he still wanted to make a PREA call. When Roscoe responded, yes, the captain said that if that is what Roscoe want to do, then the captain had been told to lock Roscoe up. Roscoe was then escorted to segregation without incident. (*Id.* ¶ 25.)

The following day, on January 8, Roscoe states that Perrigan gave him a false

2

disciplinary charge of tampering with a security device for allegedly kicking the door.[2] (*Id.*
¶ 26.) Roscoe then alleges that twice on January 8 and once on January 10, he requested and was denied the opportunity to make a PREA call from segregation. Finally, on January 11, Roscoe was permitted to use the telephone and made a PREA complaint against Stevens based on their January 7 interaction. (*Id.* ¶¶ 27–31.)

**B. Bentley's PREA Investigation**

In response to the PREA report, Bentley conducted an investigation, which included his interviewing Roscoe and his cellmate, Offender Perry, and obtaining written statements from both.[3] Before each man gave his written statement, he was warned about making false allegations or statements. Roscoe's written statement does not mention anything about kicking the door. It simply states that Stevens made the first sexual comment noted above in response to Roscoe requesting an informal complaint form. His written statement to Bentley added that, after the first comment, Stevens came back to his cell and "began to trade more unpresantry[sic] about how [Roscoe] was having sex with [his] celly," resulting in an argument. (Bentley Aff., ¶ 5, Dkt. No. 16-2; Roscoe Statement, Dkt. No. 26-2 at 3.)

Perry's written statement said:

> Officer Stevens came to ask E. Roscoe why he was kicking the door[.] Roscoe stated how am I kicking the door lying in bed[.] Officer Stevens stated for E. Roscoe to come to the door so that he can hear him[.] [S]o Roscoe got out of bed to go to the door[.] [W]hile at the door officer Stevens made threats to Roscoe how he should come in the cell to beat him and stated to him that they need to spend some one on one time together and began to lick his lips and started smiling.

---

[2] On January 24, 2018, Roscoe attended a disciplinary hearing and this charge was dismissed by the hearing officer.

[3] In a counter-affidavit, Roscoe disputes the date given by Bentley as the date of the interviews, but the date is immaterial to the court's resolution of the issues.

3

(*Id.* ¶ 6.) In this written statement, Perry stated that he could hear the conversation between Roscoe and Stevens and that his statement was true and accurate. (*Id.*) When Bentley confronted Perry about the fact that his and Roscoe's written statements were different, Perry admitted that they were "completely" different. (Bentley Report excerpt, Dkt. No. 26-2 at 2.)

Bentley also obtained a written statement from Corrections Officer Stevens, who stated that he went to Roscoe's cell because Roscoe was kicking the cell door. Stevens asked Roscoe what was wrong, and offender Roscoe became violent and threatened him and Corrections Officer Perrigan, stating that he wanted them to open the cell door so he could "whip [their] ass." Captain Still and Sargent Marsee were notified, and Captain Still ordered Roscoe to be placed in a segregation cell. When Stevens and Officer Perrigan went to the cell to retrieve Roscoe's property, offender Perry made threatening remarks to them. Again, they notified Captain Still, who ordered Perry to be placed into segregation, as well. Officer Stevens stated that no sexual remarks were made to Roscoe or Perry at any time.

Based on the discrepancies in the statements between Perry and Roscoe as to what Stevens allegedly said, Stevens' denial that he made any sexual statements whatsoever, and the fact that the allegations by Roscoe were made on the same date that both he and Perry were placed in segregation as a result of interactions with Stevens (thereby giving both Roscoe and Perry a motive to falsely accuse Stevens), Bentley concluded that both Perry and Roscoe should be charged with disciplinary violations for making false statements against an officer. Bentley also deemed Roscoe's PREA allegation unfounded, a finding reviewed and approved by an institutional investigator and defendant King, the PREA coordinator.

**C. Disciplinary Proceeding**

To resolve the disciplinary charge report that Bentley filed against Roscoe on February 13, 2018—which Roscoe claims was false and was filed in retaliation for his PREA complaint—

4

a hearing was held on February 22, 2018, before hearing officer defendant Counts. Roscoe challenges various aspects of that disciplinary hearing, which are discussed in the course of addressing his due process claim in Section III.B. *infra*.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

Roscoe has submitted affidavits in response to the summary judgment motion (Dkt. Nos. 26-1), and the court considers those sworn statements as summary judgment evidence. Likewise, the court treats statements in Roscoe's verified complaint, if based on personal knowledge, as evidence in opposition to the summary judgment motion. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Because his opposition brief itself is not sworn or verified, however, the court

5

does not consider statements in the opposition as evidence to counter the summary judgment evidence. *United States v. White*, 366 F.3d 291, 300–01 (4th Cir. 2004). Also part of the record before the court are the audio recording of the disciplinary hearing, which is Exhibit 5 to Counts's affidavit, and the audio of Roscoe's call to the hotline and the video reviewed by Bentley, which were provided by defendants at the court's direction. (Dkt. Nos. 38, 41.)

### III. DISCUSSION

#### A. Official Capacity Damages

As a preliminary matter, defendants correctly note that Roscoe cannot obtain money damages from the defendants in their official capacities under § 1983. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Roscoe acknowledges this and states that he is not seeking money damages from any defendant in his or her official capacity. (Dkt. No. 26 at 7.) Thus, the court will grant defendants' motion for summary judgment as to Roscoe's § 1983 claims against defendants in their official capacities for money damages.

#### B. Fourteenth Amendment Due Process Claim

Roscoe's due process claim is based on a number of allegations all stemming from the disciplinary hearing for the charge brought by Bentley: making a false report against an officer. Specifically, Roscoe alleges that he was denied documentary evidence (the full investigative report from Bentley) and two witnesses (the PREA hotline operator and offender Perry) at his disciplinary hearing; that the disciplinary hearing officer was biased; that there was insufficient information to find him guilty of that charge; and that his due process rights were violated when defendants Kiser and Elam (the Warden of Red Onion and Regional Administrator, respectively)

6

upheld his disciplinary conviction on appeal. (*See generally* Compl. ¶¶ 36–38.)

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). For an inmate to establish a constitutionally protected liberty or property interest requires a showing of an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest).

In their motion for summary judgment, defendants assert that because the only punishment resulting from the challenged disciplinary proceeding was a fifteen-dollar fine, Roscoe has not alleged any protected liberty or property interest. They further contend that, in any event, Roscoe was not denied due process during his hearing or the appeal process. (Mem. Supp. Mot. Summ. J. 8–11, Dkt. No. 16.)

In response to their first argument, Roscoe seems to acknowledge that he did not have a protected liberty interest, but he claims that the fifteen dollars in his account, which was given to him by his sister, is a constitutionally protected property right. Judges of this court have disagreed, instead holding that "small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty imposed was a fifteen-dollar penalty), appeal docketed, No. 19-7343 (4th Cir. Sept. 24, 2019); *Ferguson v. Messer*, No. 7:15CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30,

7

2017) (concluding that three twelve-dollar fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding twelve-dollar fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a loss of a property interest ). As in the foregoing cases, here, Roscoe was subjected to a small fine (fifteen dollars) and that penalty is insufficient to give rise to a protected property interest in the context of prison life under the rationale of *Sandin*.

The court recognizes that the Fourth Circuit has not yet spoken directly on this issue and that some courts disagree on whether *Sandin*'s analysis—requiring that the particular hardship be "atypical and significant"—applies in the context of *property* deprivations, given that *Sandin* addressed whether a particular deprivation implicated a liberty interest.[4] But even if such a minimal fine is a constitutionally protected property interest, the record does not contain evidence from which a reasonable factfinder could conclude that Roscoe's due process rights were violated.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing

---

[4] The Supreme Court of Virginia recently considered whether a small fine imposed on a prisoner could give rise to a protected property interest sufficient to support a § 1983 claim. *Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019). The *Anderson* court noted that there was some disagreement among federal courts on this issue and discussed the different rationales underlying the decisions, it but ultimately found it unnecessary to resolve the issue in the case before it. *Id.*

8

*Wolff*, 418 U.S. at 563–67)).

*Wolff* "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." *Id.* at 454. In *Hill*, where the plaintiff's good time credits were revoked, the court held that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

**1. Defendant Counts**

*a. Failure to allow witnesses and exhibits*

Roscoe first complains that Counts, as the hearing officer, did not allow his requested witnesses and exhibits. In particular, he contends that she did not allow him to call the PREA hotline operator or Offender Perry as a witness, and she did not allow him to review or introduce Bentley's full investigative report into Roscoe's PREA complaint. It is well established that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. The Supreme Court expressly "stop[ped] short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 567.

Counts, in her discretion as factfinder, considered Roscoe's requests, but she concluded first that the testimony of the PREA hotline operator was not material, because he or she would not be able to determine whether Roscoe was being truthful or not in his statements, and there

9

was no dispute that he made the statements that he did. The court agrees with Counts's assessment of the materiality of the PREA hotline operator. Even if Roscoe reported via the hotline the exact same allegations that he did in his statement to Bentley, that does not undermine the ultimate finding that his statements to Bentley were false. That is particularly true in light of the significant disparities in the statements of Perry and Roscoe as to what Stevens said.

As to calling offender Perry as a witness, defendant Counts obtained a written statement from Perry instead. Counts explained that Perry was a "segregation offender" and there was a policy prohibiting his being physically present at the hearing due to his security classification, a restriction similar to that upheld by the Fourth Circuit in *Brown v. Braxton*, 373 F.3d 501 (4th Cir. 2004), against a due process challenge. Moreover, in his statement to Counts, Perry clearly said that he could not hear all of what was said between Stevens and Roscoe. Thus, the court does not believe that any reasonable factfinder could find that exclusion of Perry as a live witness violated Roscoe's due process rights. *See, e.g.*, *Brown*, 373 F.3d at 505 ("hearing officers . . . may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration").

Finally, with regard to Bentley's investigative report, Counts rejected Roscoe's request because she determined that the document was restricted from offender viewing.[5] She does not provide an explanation as to why it was restricted or posed a security risk, and it is defendants' obligation to identify a valid penological reason for restricting access to a particular document. *Lennear v. Wilson*, 937 F.3d 257, 270 (4th Cir. 2019) (discussing this requirement as to video

---

[5] The audio recording of the hearing indicates that the entire report was available to Counts.

surveillance evidence). Nonetheless, even assuming that the full document should have been provided to Roscoe, the failure to do so did not amount to a due process violation here. First of all, Counts allowed Bentley to testify at the hearing and Roscoe asked him questions about his investigation and his findings. Moreover, in order to show a procedural due process violation, there must be evidence that the document would have "aided the [inmate's] defense." *Lennear*, 937 F.3d at 277. The record before this court contains substantial chunks of Bentley's report (if not the whole report), including the witness statements from Stevens, Perry, and Roscoe, a description of information reviewed, and Bentley's conclusions.[6] (Dkt. No. 26-2 at 1–5.) Having now reviewed those portions of Bentley's report, it is clear that it would not have aided Roscoe's defense, which is the standard for evaluating a failure to disclose or consider testimonial or documentary evidence. Rather, the report simply confirms Bentley's testimony from the hearing and the reasons why he believed Roscoe's allegations against Stevens were false. Accordingly, the court cannot find that the failure to provide the entirety of that report to Roscoe was not a due process violation.

### b. Failure to Provide Impartial Decisionmaker and Lack of Evidence

Roscoe next claims that Counts was biased against him. An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). In order for this court to find Counts less than impartial, "there must be some substantial countervailing reason to conclude that [she was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004); *see Wolff*, 418 U.S. at 592 (Marshall, J.,

---

[6] No party has explained or identified what else is in the report, if anything.

concurring) ("Due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or had any other form of personal involvement in the case.").

Roscoe does not point to anything in particular for support of his claim that Counts was biased against him. Without more, Counts's ultimate decision to believe Bentley's testimony instead of believing Roscoe does not prove her partiality or bias. *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996). Indeed, judging the credibility of participants is a critical part of a hearing officer's job, and federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *Hill*, 472 U.S. at 456. Here, there was "some evidence" to support the finding. In particular, Bentley's belief was itself based on the discrepancies in the statements of Perry and Roscoe, Officer Stevens's denial, and the fact that Stevens had issued disciplinary charges to both Perry and Roscoe, thereby giving rise to a motive for both offenders to make a false allegation about him. Moreover, Counts' findings were laid out in a reasonable fashion. All of these factors belie Roscoe's vague contention that Counts was not impartial. Furthermore, as defendants note, two independent administrators reviewed Counts's decision and agreed with it. Quite simply, there is no evidence from which a reasonable factfinder could conclude that Counts was not impartial; Roscoe's vague and conclusory allegation to the contrary is insufficient to allow the claim to survive summary judgment.

For like reasons, Roscoe's claim that Counts's finding is not supported by evidence also fails. Roscoe seems to be arguing that Counts got it wrong. But this court is not tasked with deciding that issue or reweighing the evidence. *Hill*, 472 U.S. at 454. Instead, the court has already noted that there was "some evidence" to support the charge, such that Roscoe's

substantive due process rights were not violated.

### 2. Defendants Kiser and Elam

Roscoe also names defendants Kiser and Elam as defendants to his due process claim, but he fails to set forth facts from which a reasonable factfinder could infer that there was any due process violation by these defendants. As to Kiser, his sole involvement was in affirming his conviction on review. Plaintiff does not point to any particular errors on appeal or anything to undermine that decision, other than the same allegations made as to Counts and the alleged defects during the hearing. This is insufficient to satisfy his burden on summary judgment.

With regard to Defendant Elam, Roscoe avers that Elam told Roscoe that his conviction could only be supported with an audio recording of the conversation between Plaintiff and C/O Stevens. (Compl. ¶ 38.) Roscoe does not provide any details as to when in the process Elam purportedly made that statement or if Elam was aware of Perry's contradictory statement at the time, which would be additional reason to support Stevens' version of events over Roscoe's. In any event, the fact that Elam affirmed the decision, which the court has already found was supported by "some evidence," does not give rise to an independent due process violation by Elam.

For all of these reasons, the court will grant defendants' summary judgment motion as to Roscoe's due process claim.

### C. First Amendment Retaliation Claim[7]

Roscoe asserts his First Amendment retaliation claim against six of the defendants: Artrip, Kiser, King, Marsee, Perrigan, and Bentley. His allegations against each are discussed

---

[7] To the extent Roscoe appears to be arguing that the disciplinary charge against him is a violation of PREA procedures because PREA prohibits retaliation, this does not give rise to a private cause of action under § 1983. *Cooper v. Duncan*, No. 7:16CV00578, 2017 WL 2271501, at *2 (W.D. Va. May 23, 2017).

13

below. In their motion for summary judgment, defendants assert that the undisputed facts show he is not entitled to relief against any of the defendants. The court agrees as to all defendants except defendants Bentley and Perrigan.

A First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

As to the first element, prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Defendants acknowledge that Roscoe's conduct in filing lawsuits or grievances is protected conduct under the First Amendment. (Mem. Supp. Mot. Summ. J. 12 (citing *Booker* , 855 F.3d at 542–45).) But they claim that he has presented no facts from which a reasonable factfinder could find in his favor as to the remaining elements.

With regard to the second element of this claim, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). As pertinent to Roscoe's claims against both Perrigan and Bentley, the Fourth Circuit has recognized that the filing of a false disciplinary action against a prisoner can satisfy the second element. *See Booker v. S.C. Dep't of Corrections*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (concluding that the filing of a false disciplinary charge unsupported by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights").

14

As to the third element of causation, a prisoner must provide evidence that supports a reasonable inference that a defendant took the alleged retaliatory action because of the prisoner's exercise of a constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). He must show that the protected activity was the "'but for' cause of the adverse action alleged." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006). Courts can infer causation when the adverse action occurs shortly after a plaintiff engaged in a protected activity. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015); *see also Honor v. Boaz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (recognizing that the elements of a prima facie Section 1983 and Title VII retaliation claims are identical). To refute such evidence, defendants can offer a legitimate and permissible reason for their actions. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). However, even after defendants have offered a legitimate reason, a plaintiff can still prevail on his claim if the evidence as a whole demonstrates that the proffered permissible reason is not the actual reason but merely a pretext for retaliation. *See id.* In analyzing this claim, however, the court must follow the Fourth Circuit's directive to generally view retaliation claims by prisoners with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams*, 40 F.3d at 74.

**1. Defendants Kiser, Artrip, and King**

Roscoe's sole allegation against Kiser is that he affirmed Roscoe's disciplinary conviction, even though Roscoe informed Kiser that the disciplinary charge was the product of retaliation. This itself does not constitute a retaliatory act and does not give rise to a retaliation claim against Kiser.

Similarly, the only conduct Roscoe alleges against Artrip is that Artrip "never addressed" Roscoe's grievance against Bentley claiming that Bentley was retaliating against him. (Compl.

¶ 39.) Roscoe does not present any facts to show that Artrip himself retaliated against him, and he cites to nothing that would suggest that the denial of a grievance alleging retaliation, without more, can itself constitute retaliation.

Roscoe's allegations against Defendant King are that she "ordered defendant [Bentley] to write plaintiff a false charge in retaliation of reporting staff misconduct." (Compl. ¶ 54.) This general allegation is a conclusory allegation not supported by facts or any further detail. Even if King made such an order, nothing ties King's decision to any retaliatory motive.

For the foregoing reasons, all three of these defendants—Kiser, Artrip, and King—are entitled to summary judgment as to the retaliation claim.

### 2. Defendant Marsee

Roscoe alleges that Defendant Marsee repeatedly threatened to put him in segregation, saying that she was sick of him filing complaints and grievances. But he does not allege that Marsee actually played any role in his being sent to segregation, nor does he allege any other retaliatory conduct by her. Thus, he has failed to allege a retaliatory act by Marsee; only threats of retaliation. Marsee is entitled to summary judgment on Roscoe's retaliation claim.[8]

### 3. Defendant Perrigan

Defendant Perrigan was present with Stevens, and he apparently supported Stevens's report to the Captain concerning Roscoe's behavior, which led to Roscoe being put in segregation. Roscoe offers the following evidence of causation: Perrigan knew that Roscoe

---

[8] In his counter-affidavit, Roscoe tries to undermine Marsee's testimony that she did not know about the PREA allegations against Stevens until the lawsuit was filed. (Dkt. No. 26-1 at 1–2.) Specifically, he points to the statement Stevens made as part of the PREA investigation, in which Stevens states that Marsee was notified "about the incident" at the cell door. (Dkt. No. 26-2 at 5.) In the next sentence of his statement, Stevens states that no sexual comments were made. Roscoe's attempts to link the two statements in order to suggest that Marsee knew about the PREA report before he was placed in segregation fails. Stevens's denial that he made sexual comments came as part of the PREA investigation, and there is nothing in his statements to suggest that Stevens told Marsee about sexual allegations that evening. Instead, it appears that Stevens informed Marsee that Roscoe had kicked the door and threatened him and Perrigan, which was the conduct that resulted in Roscoe being sent to segregation.

16

wanted to file a grievance and intended to file a PREA report, based on Roscoe's comments; Perrigan knew he had not seen Roscoe kick the door but brought a disciplinary charge against him for it anyway, and the disciplinary charge was dismissed.[9] Also, the false disciplinary charge was brought immediately following Roscoe stating that he wanted to file a PREA complaint. Although there is certainly not a significant amount of evidence tying the filing of Perrigan's charge to Roscoe's First Amendment activity, the facts in the record lead the court to believe that a reasonable juror might find in favor of Roscoe, although the court believes it is very unlikely. Accordingly, the retaliation claim against Perrigan narrowly survives summary judgment.

### 4. Defendant Bentley

The court assumes that the temporal proximity of Bentley's filing of the disciplinary charge here is sufficient to establish his prima facie case and also concludes that defendants have offered a legitimate and permissible reason for the filing of the charge—Bentley believed Roscoe had made a false allegation against Stevens. The sole question before the court, therefore, is whether there is sufficient evidence of causation from which a reasonable jury could conclude that Bentley would not have filed the disciplinary charge but for Roscoe's First Amendment activity.

According to Roscoe, Bentley specifically told him, "[I]f you would stop snitching on my staff filing outside PREA complaints and such, your stay here would be so much better, and just so you know, no one will believe any Honorable Red Onion Officer would say such a thing to sexually harass you. So, I will be charging you for calling the PREA Hotline [be]cause you

---

[9] In his allegations against Perrigan, Roscoe emphasizes that he "beat the charge" Perrigan brought against him that Roscoe says landed him in segregation (for kicking the door). It is true that the charge was dismissed, apparently because Officer Perrigan did not actually see Roscoe kick the door and Offender Perry was in the cell at the same time; thus, there was insufficient proof that Roscoe kicked the door. (Dkt. No. 26-2 at 18–19.)

17

could have kept this in house." (Compl. ¶ 33.) Bentley denies the allegation, and a jury may well believe him, but the court nonetheless concludes that there are disputes of fact as to the causation element of Roscoe's claim against Bentley. Accordingly, summary judgment as to Roscoe's retaliation claim against Bentley will be denied.[10]

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted as to all claims except the retaliation claims against Perrigan and Bentley.

An appropriate order will be entered.

Entered: November 22, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[10] Defendants also move for summary judgment on the grounds that they are entitled to qualified immunity. (Mem. Supp. Mot. Summ. J. 17–18.) The same disputed facts that preclude summary judgment as to the retaliation claims against Bentley and Perrigan, however, also preclude a ruling on qualified immunity because they do not allow the court to determine as a matter of law that a constitutional violation did not occur. Moreover, it was certainly well established in January 2018 that an officer could not file a false disciplinary charge against an offender in retaliation for his exercise of his First Amendment rights.